UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CODY M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-01181-JRS-MPB |
| | ) |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Cody M. ("Mr. M.") applied for child's insurance benefits based on disability and supplemental security income ("SSI") from the Social Security Administration ("SSA") on March 5, 2015, alleging an onset date of September 1, 1992. [ECF No. 7-2 at 16.] His applications were initially denied on June 4, 2015, [ECF No. 7-4 at 2; ECF No. 7-4 at 6], and upon reconsideration on August 28, 2015, [ECF No. 7-4 at 14; ECF No. 7-4 at 17]. Administrative Law Judge Belinda J. Brown (the "ALJ") conducted a hearing on August 24, 2017, [ECF No. 7-2 at 41-70], and a supplemental hearing on March 15, 2018, [ECF No. 7-2 at 73-98.] The ALJ issued a decision on May 29, 2018, concluding that Mr. M. was not entitled to receive benefits. [ECF No. 7-2 at 13.] The Appeals Council denied review on February 22, 2019. [ECF No. 7-2 at 2.] On March 25, 2019, Mr. M. timely filed this civil action asking the

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

Court to review the denial of benefits according to 42 U.S.C. § 405(g). [ECF No. 1.] The Court notes that jurisdiction is also proper according to 42 U.S.C. § 1383(c).

## I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v)[2], evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The burden of proof is on the claimant for Steps One

---

[2] The Code of Federal Regulations contains separate sections relating to child's insurance benefits based on disability and SSI that are identical in most respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to insurance benefits sections only, but the Court will detail any differences when applicable.

3

through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

An individual is entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died, if the individual: (1) is the insured person's child based upon a relationship recognized by the regulations, (2) is dependent on the insured, (3) has applied, (4) is unmarried, and (5) is under the age of 18; is 18 years or older and became disabled before age 22; or is 18 years or older and qualifies for benefits as a full-time student. 20 C.F.R. § 404.350(a).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. M. was 22 years of age at the time he filed the applications under review. [*See* ECF No. 7-6 at 2.] He has completed a general equivalence diploma, had a

4

history of special education while in school, and has never worked. [ECF No. 7-7 at 4.][3]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Mr. M. was not disabled. [ECF No. 7-2 at 28.] Specifically, the ALJ found as follows:

- Mr. M. had not attained age 22 as of September 1, 1992, the alleged onset date. [ECF No. 7-2 at 19.]

- At Step One, Mr. M. had not engaged in substantial gainful activity[4] since September 1, 1992, the alleged onset date. [ECF No. 7-2 at 19.]

- At Step Two, he had "the following severe impairments: hearing loss, asthma, bilateral hip dysplasia, morbid obesity, dysthymia, and unspecified anxiety disorder." [ECF No. 7-2 at 19 (citations omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [ECF No. 7-2 at 19.]

- After Step Three but before Step Four, Mr. M. had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally climb ramps and stairs, balance, and stoop. No climbing of ladders, ropes, or scaffolds. No kneeling, crouching, or crawling. No work at unprotected heights. He can occasionally have contact with dust, odors, and pulmonary irritants. No use of a telephone and must be able to face any speakers directly. He can perform simple, routine tasks and make simple work-related decisions; he requires demonstration for changes. He can occasionally have contact with coworkers, supervisors, and the general public. In addition to normal breaks, the claimant will be off task 5% of the time in an 8-hour workday." [ECF No. 7-2 at 21-22.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

5

- At Step Four, there was no past relevant work to consider. [ECF No. 7-2 at 27.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Mr. M.'s age, education, work experience, and RFC, he could have performed jobs that existed in significant numbers in the national economy through the date of the decision in representative occupations, such as a lens inserter, document preparer, and parimutuel-ticket checker. [ECF No. 7-2 at 27-28.]

## III.
### DISCUSSION

Mr. M. raises five assignments of error: (1) the ALJ failed to include all of Mr. M.'s limitations when presenting a hypothetical to the VE at Step Five, (2) the ALJ's finding that Mr. M. could perform work as a lens inserter was not supported by substantial evidence, (3) the ALJ did not meet her burden to explain how conflicts between the Dictionary of Occupational Titles ("DOT") and the VE's testimony were resolved, (4) the ALJ improperly gave more weight to the opinion of a non-examining state agency physician than the opinion of an examining state agency physician, and (5) the ALJ did not adequately evaluate Mr. M.'s obesity.

**A. Moving Mechanical Parts**

The ALJ gave "substantial weight" to the opinion of Lee A. Fischer, M.D., the impartial medical expert who testified at the supplemental hearing. [ECF No. 7-2 at 27.] The ALJ explained that Dr. Fischer was able to review the entire record—except for some mental health records that were submitted after the supplemental hearing—and his assessment was generally consistent with the substantial evidence of record detailed in the decision. [ECF No. 7-2 at 27.] Dr. Fischer was asked to assess physical limitations that were supported by the record and the ALJ's ultimate RFC finding, in

6

relevant part, matched Dr. Fischer's opinion except that the ALJ omitted one limitation assessed by Dr. Fischer that Mr. M. should "never be around moving mechanical parts . . . ." [ECF No. 7-2 at 76.]

The ALJ did not explain in the written decision why the limitation was not included in the RFC finding. The SSA requires that the "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *7. Moreover, the ALJ did not include the limitation in hypothetical questions to the VE for evaluation at Step Five. [*See* ECF No. 7-2 at 95.] The ALJ's omissions were errors.

One of the representative occupations that the ALJ found Mr. M. could perform based on the VE's testimony was as a lens inserter. The DOT description of the occupation is "[f]its lenses into plastic sunglass frames and places frames on conveyor belt that passes under heat lamps which soften frames preparatory to setting of lenses." DICOT 713.687-026 (G.P.O.), 1991 WL 679273. An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. See 20 C.F.R. § 404.1566(d)(1). Here, the DOT's description that frames are placed on a conveyor belt does appear to contradict the limitation assessed by Dr. Fischer that Mr. M. should never be around moving mechanical parts. While the Commissioner points out that the Selected Characteristics of Occupations ("SCO")—a companion publication of the DOT also

7

published by the Department of Labor—indicates that moving mechanical parts are "not present" with the performance of the occupation, the conflict between the publications would have been best resolved by the initial fact-finder with the assistance of the VE. Because the VE was not asked to consider the limitation, the Court cannot find substantial evidence supporting the ALJ's finding that Mr. M. was capable of performing work as a lens inserter.

However, the Court finds the ALJ's error harmless. The Seventh Circuit has described the harmless error doctrine:

> But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result. *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir.2010). That would be a waste of time and resources for both the Commissioner and the claimant. Thus, we look at the evidence in the record to see if we can predict with great confidence what the result on remand will be. We note (yet again, see *Spiva,* 628 F.3d at 353 and the critical discussion therein) that the harmless error standard is not, as the Commissioner and district court seem to believe, an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ's inadequate articulation. We have already concluded that the ALJ erred. The question before us is now prospective—can we say with great confidence what the ALJ would do on remand—rather than retrospective.

*McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011). Here, the Court can say with great confidence that on remand, the ALJ would still find Mr. M. disabled based on the ALJ's other findings in the written decision. Based on the VE's testimony, the ALJ concluded that Mr. M. could also perform jobs in representative occupations as a document preparer, with 15,000 jobs nationally, and parimutuel-ticket checker, with 1,100 jobs nationally. [ECF No. 7-2 at 28.] The Seventh Circuit has held as a matter of law that as few as 1,400 jobs can meet the Commissioner's burden at Step

8

Five to find other work that exists in significant numbers in the national economy that a claimant can perform. *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993). Collectively, the remaining jobs available, totaling 16,100 nationally, are a significant number and meet the Commissioner's burden at Step Five.

Mr. M. also raises challenges to the ALJ's finding that he would be able to perform the representative occupations as a document preparer and parimutuel-ticket checker, contending specifically that there is a conflict with the limitation in his RFC that he is not to use a telephone and must be able to face speakers directly. [ECF No. 9 at 14.] However, Mr. M. relies on descriptions of occupations to develop his argument that do not match the DOT descriptions of the occupations. [*See* ECF No. 9 at 14-16; *compared with* DICOT 249.587-018 (G.P.O.), 1991 WL 672349 (Document Preparer); DICOT 219.587-010 (G.P.O.), 1991 WL 671989 (Parimutuel-Ticket Checker).] The Court's review of the DOT descriptions does not find any indication that the occupations require telephone communication. Furthermore, it is evident from the transcript that the VE specifically considered the limitation when offering qualifying examples of occupations, "sorry, I'm trying to deal with the telephone issue here." [ECF No. 7-2 at 96.] Moreover, Mr. M.'s representative did not object to the VE's testimony that these jobs could be performed with the limitation in question. [*See* ECF No. 7-2 at 97.] The Seventh Circuit has held that where no conflict exists with the DOT, a failure to raise an objection to the VE's testimony results in forfeiture of those arguments on appeal. *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016). As such, the Court finds that substantial evidence supports the

ALJ's findings that Mr. M. could have performed the representative occupations as a document preparer and parimutuel-ticket checker. Accordingly, the Court finds any error at Step Five harmless.

**B. Consultative Examiner's Opinion**

Mr. M. contends that the ALJ should have given more weight to the opinion of an examining physician, Shuyan Wang, M.D., than the opinion of the medical expert, Dr. Fischer. [ECF No. 9 at 22.]

Following Mr. M.'s initial hearing, the ALJ sent Mr. M. to get updated x-ray imaging of his bilateral hips and lumbar spine, [ECF No. 7-2 at 68], and to be examined by Dr. Wang on September 12, 2017, [*See* ECF No. 7-18 at 2]. Dr. Wang's examination of Mr. M.'s chest and lungs indicated coarse breathing sounds, slight wheezing, and "obvious increased expiratory phase of respiration." [ECF No. 7-18 at 3.] Dr. Wang observed that Mr. M. was "short of breath with almost all the activities." [ECF No. 7-18 at 3.] Dr. Wang also recorded that Mr. M.' heart rate was 125 beats per minute at rest and 135 with activity. [ECF No. 7-18 at 3.]

Dr. Wang completed a medical source statement assessing Mr. M.'s ability to do work-related physical activities and opined that he could lift and carry up to ten pounds frequently and eleven to 50 pounds occasionally but would not be able to do so "often" because of his breathing problems. [ECF No. 7-18 at 8.] Dr. Wang also assessed that Mr. M. could continuously use his hands for fingering, frequently use his hands for handling, and occasionally reach in all directions (up to 1/3 of an eight-hour day). [ECF No. 7-18 at 10.] Asked to explain the clinical findings supporting

10

her manipulative assessments, Dr. Wang wrote "exertional short[ness] of breath." [ECF No. 7-18 at 10.]

The ALJ gave Dr. Wang's opinion "some weight" noting that it was supported by an examination that was largely negative but with "some positive findings." [ECF No. 7-2 at 26.] The ALJ further explained:

> However, the reaching and sitting limitations are generally inconsistent with the substantial evidence of record discussed in this decision, including the September 2017 hip, pelvis, and lumbar spine x-rays, the normal pulmonary testing in November 2015, the list of current medications in Dr. Wang's consultative exam report that did not include any respiratory medications, and the lack of treatment, complaints, and physical exam findings in 2017 and 2018 relating to respiratory issues other than sinus surgery (B19E; B20F; B22F; B27F; B28F).

[ECF No. 7-2 at 26.] The ALJ also explained that more weight was given to Dr. Brooks's opinion. [ECF No. 7-2 at 26.] Dr. Brooks is a clinical psychologist who testified as a medical expert at the supplemental hearing about Mr. M.'s mental functioning. [*See* ECF No. 7-18 at 15.] Reviewing courts give the ALJ's "opinion a commonsensical reading rather than nitpicking at it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999). As explained above, the ALJ gave substantial weight to the opinion of the other medical expert, Dr. Fischer, and adopted his assessment of Mr. M.'s physical limitations, albeit with one exception. Dr. Fischer opined that Mr. M. would be able to sit for six hours of an eight-hour day and did not have any limitations with reaching. [ECF No. 7-2 at 76-77.]

The VE's testimony established that Dr. Wang's limitation to occasional reaching in all directions would be work preclusive. [ECF No. 7-2 at 97.] The Seventh Circuit has held that the ALJ is not required to credit the opinion of a consultative

11

source that examines the claimant at the request of the agency. *Beardsley v. Colvin,* 758 F.3d 834, 839 (7th Cir. 2014). "But rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Id.* (citing *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."); 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.")).

The Court does not find error because the ALJ explained why Dr. Wang's reaching limitation was rejected and the ALJ supported that conclusion with citation to relevant, substantial evidence throughout the decision. The ALJ noted that Mr. M. had complained of shortness of breath affecting his ability to reach. [ECF No. 7-2 at 19.] Mr. M. testified that shortness of breath from constant movement would be the basis of a limitation with reaching. [ECF No. 7-2 at 86.] However, when completing forms for the SSA in 2015 reporting his areas of functional limitation, he did not indicate that reaching was affected. [ECF No. 7-7 at 59; ECF No. 7-7 at 92.] On May 22, 2015, he reported to a consultative examiner:

> According to Mr. [M], he bathes, grooms, and dresses without assistance or reminder, and has no trouble doing so. He states that he knows how to cook (i.e. meats including "burgers" and pasta), but cooks only occasionally. He states that he helps with housecleaning. He reportedly vacuums, sweeps, mops and cleans the bathroom. He says that's [sic]

12

his back will sometimes "start to stress" but he is able to complete the chores if he does not "overexert."

[ECF No. 7-15 at 81 (He also reported that he takes an inhaler "before heavy physical activity.".] That same day, Mr. M. reported to another consultative examiner that he had ran out of both his nebulizer and inhaler medications a month earlier and that his asthma caused "dyspnea on exertion if he has to do prolonged physical activity" but he had never been to the hospital for it and he had not seen a pulmonologist in about two years. [ECF No. 7-15 at 89.] Mr. M estimated that he could walk about a quarter of a mile, stand for 45 minutes before needing to sit down, sit for about two hours at time, lift 70 pounds at one time, and 30 pounds repetitively. [ECF No. 7-15 at 89-90.] That consultative examination indicated that Mr. M. was "in no acute distress," was able to ambulate about the room at a normal pace, did not have any difficulty getting on or off the examination table, had a regular heart rate and rhythm, his lungs were clear, and his "AP diameter [was] not increased." [ECF No. 7-15 at 90-91.] At an annual examination on January 4, 2017, a review of systems was negative for shortness of breath. [ECF No. 7-17 at 62.] The examination of his chest and pulmonary functioning indicated "[e]ffort normal and breath sounds normal." [ECF No. 7-17 at 63.]

There is little to no evidence that the degree of shortness of breath found by Dr. Wang during the one-time consultative examination was supported longitudinally. Mr. M. received little treatment for any kind of acute breathing issues and other examinations were negative for the issue. Furthermore, his own reported abilities to the SSA and providers did not indicate severe shortness of breath and

13

support that he is capable of activity commensurate with the sedentary level of exertion assessed by Dr. Fischer and found by the ALJ. Accordingly, the Court finds the ALJ's RFC finding, in relevant part, to be supported by substantial evidence.

**C. Obesity**

Mr. M also contends that the ALJ did not build a logical bridge between the evidence of Mr. M.'s obesity and the conclusion that he would be capable of sedentary work. [ECF No. 9 at 26.] Specifically, he contends, in part, that a combination of obesity and hip dysplasia would make it painful for him to perform the prolonged sitting associated with sedentary work. [ECF No. 9 at 25.]

Again, the Court finds the ALJ's RFC finding adequately articulated and supported by substantial evidence. The ALJ gave substantial weight to the opinion of Dr. Fischer who testified that Mr. M.'s severe impairments included "extreme obesity." [ECF No. 7-2 at 75.] As noted above, the ALJ found morbid obesity to be a severe impairment and Dr. Fischer's assessment was that Mr. M. was capable of sedentary work with prolonged sitting. Even when an ALJ has failed to explicitly acknowledge a claimant's obesity, the Seventh Circuit did not find harmful error when the ALJ adopted expert opinions who were aware of the condition. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (obesity "was factored indirectly into the ALJ's decision as part of the doctors' opinions").

While Mr. M. points to some specific evidence that he would be limited in his ability to perform prolonged sitting, including his own testimony about pain after an hour of sitting, and a treating nurse practitioner's opinion that he could sit for a total

14

of two hours in an eight-hour day, [ECF No. 9 at 25], Mr. M. does not engage the relevant portions of the ALJ's written decision that addressed those claims. The ALJ did not find Mr. M.'s subjective symptoms to be completely credible and the ALJ gave various reasons for her conclusion. [ECF No. 7-2 at 22.] For example, the ALJ noted that Mr. M. relied on only over-the-counter pain medications for hips and had received minimal treatment. [ECF No. 7-2 at 23-24.] As noted in the standard of review section, the ALJ's credibility determination is entitled to considerable deference and should be overturned only if patently wrong. Mr. M. has not developed any argument that engages that standard of review. *See Krell v. Saul,* 931 F.3d 582, 586 n.1 (7th Cir. 2019) (perfunctory and undeveloped arguments are waived). Similarly, the ALJ gave "little weight" to the opinion of nurse practitioner Painter. [ECF No. 7-2 at 26.] The ALJ's explanation—which is again not engaged by Mr. M. on appeal—included recognition that nurse practitioner Painter's treatment of Mr. M. largely related to mental health issues and "treatment relating to the claimant's hips was minimal." [ECF No. 7-2 at 26 (citation omitted).] As such, the Court does not find error with the ALJ's consideration of the evidence relating to the potential functional effects of Mr. M.'s obesity.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue,* 364 F. App'x 271, 274 (7th Cir. 2010). Taken together, the Court can find no legal basis presented by Mr. M. to reverse the ALJ's decision

15

that Mr. M. was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

Date: 3/9/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Brian J. Alesia
OFFICE OF REGIONAL CHIEF COUNSEL FOR SOCIAL SECURITY
brian.alesia@ssa.gov

Norman Lamont Reed
THE LAW OFFICE OF NORMAN REED
reedsmithlaw@aol.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov